# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | |
|---|---|
| DANIEL FOLEY, d/b/a ICY PASSAGE FISH, | |
| Plaintiff, | 1:07-cv-00016-JWS |
| vs. | ORDER AND OPINION |
| | [Re: Motion at Docket 31] |
| UNITED STATES DEPARTMENT OF THE INTERIOR, NATIONAL PARK SERVICE, | |
| Defendant. | |

## I. MOTION PRESENTED

At docket 31, plaintiff Daniel Foley, d/b/a Icy Passage Fish ("plaintiff," "Foley" or "IPF"), applies for attorneys' fees in the amount of $36,344 and expenses in the amount of $1,292 pursuant to the Equal Access to Justice Act ("EAJA"). Defendant United States Department of the Interior, National Park Service ("NPS") opposes the motion at docket 37. Foley replies at docket 38. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

On October 7, 2008, this court granted Foley's motion to remand and issued judgment in his favor. Foley subsequently filed an application for attorneys' fees and

expenses on October 24, 2008, and claims entitlement to fees and expenses under the EAJA on the ground that the NPS's actions and litigation position were not substantially justified. Foley submits that the fees for his counsel, James Clark ("Clark") and James Baldwin ("Baldwin"), are reasonable, and should be enhanced based on a cost-of-living adjustment and their expertise in environmental and administrative law. Foley calculates their fees as follows:

```
2007
James F. Clark      Robertson, Monagle & Eastaugh
                    32 hours x $166 = $5,312
                    Private Practitioner
                    12 hours x $166 = $1,992
2008
James F. Clark      Private Practitioner
                    105.5 hours x $176 = $18,568
James L. Baldwin    Private Practitioner
                    59.5 hours x $176 = $10,472
```

**Total Fees                                    $36,344**

The above lodestar calculation includes the cost-of-living enhancement provided by 28 U.S.C. § 2412(d)(2)(A)(ii), which the NPS does not oppose. In addition to the above, Foley seeks an "expertise enhancement" for attorneys Clark and Baldwin, which would raise their respective rates to $200 per hour and Foley's total fee request to $41,800. Foley also requests fees for time spent replying to the NPS's opposition brief and expenses in the amount of $1,292.[1] The NPS opposes Foley's application, arguing that its actions and litigation position were substantially justified and that no "expertise enhancement" is warranted. Furthermore, the NPS argues that Clark's fees should be reduced for the period of time following his suspension from practice by the Alaska Bar Association on May 15, 2008. The court considers the parties' arguments below.

---

[1]Foley's Corrected Proposed Order seeks expenses in the amount of $1,302, but Foley fails to explain the $10 difference in his reply brief. Therefore, the court assumes that the amount sought is $1,292. Docket 38.

-2-

### III. DISCUSSION

Foley seeks attorneys' fees pursuant to the EAJA, which is intended to diminish the deterrent effect of seeking review of, or defending against, governmental action in federal court.[2] The EAJA provides, in pertinent part:

> a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than in cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.[3]

The prevailing party must not be worth more than two million dollars at the time the action was filed and must have incurred such fees and other expenses in the civil action in which it prevailed.[4] "Fees and other expenses" include "reasonable attorney fees."[5]

It is undisputed that Foley was the prevailing party. However, the NPS disputes Foley's claim on the ground that the NPS's actions and position in the administrative proceedings and the current litigation were substantially justified. "Substantial justification" under the EAJA means that "the government's position must have a reasonable basis both in law and fact . . . [and must be] substantially justified at each stage of the proceedings."[6] The government bears the burden of establishing the reasonableness of the underlying government action at issue and the validity of the government's action before the court.[7] The inquiry into the nature of the underlying government action concerns only the merits of that action, while the inquiry into the government's position before the court will

---

[2] *See Sullivan v. Hudson*, 490 U.S. 877, 883 (1989).

[3] 28 U.S.C. § 2412(d)(1)(A).

[4] *Id.* §§ 2412(a)(1) and (d)(2)(B).

[5] *Id.* § 2412(d)(2)(A).

[6] *Shafer v. Astrue*, 518 F.3d 1067, 1071 (9th Cir. 2008) (internal quotations and citation omitted).

[7] *Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005).

encompass the first inquiry to the extent the government chooses to defend the merits of the challenged action.[8] Of the second inquiry, extraneous circumstances bearing upon reasonableness must also be assessed.[9] The focus of each inquiry is the conduct, not beliefs, of the agency and the government's counsel.[10] Although an agency's underlying actions may be found to be arbitrary and capricious, such conduct is not *per se* unreasonable.[11]

In its decision on remand, the NPS failed to consider information contained in Foley's November 14, 2002 letter, which stated that his tax returns were cumulative of all of his business ventures, when it applied the income projection approach to Foley's claim for EDBGR. Although Foley did not argue that the NPS should apply this approach, the NPS's voluntary consideration of Foley's tax returns "triggered a duty to inquire into the information contained in his November 14, 2002 letter, which is part of the administrative record."[12] The NPS proceeded to use Foley's tax returns to make this alternative calculation in a desire to find Foley additional compensation without considering how Foley's tax returns were to be used when calculating Foley's EDBGR claim under the projected income approach. The NPS also erred in failing to provide Foley an opportunity "to present explanatory data supporting his claim for EDBGR under the projected income approach and clarifying the data in his tax returns."[13] This court therefore concluded that the NPS's actions on remand were arbitrary or capricious because it failed to inquire into the details of Foley's tax returns.[14] The government's position during this litigation has consistently been that the NPS's actions were not arbitrary because Foley did not provide

---

[8] *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988).

[9] *Id.*

[10] *Andrew v. Bowen*, 837 F.2d 875, 878 (9th Cir. 1988).

[11] *Id.*

[12] Docket 29 at 12.

[13] *Id.* at 14.

[14] *Id.*

-4-

appropriate detail about his tax returns that would have enabled the ALJ to properly apply the projected income approach to his EDBGR claim. Furthermore, the government now argues that the individual tasked with reviewing Foley's tax returns was performing nothing more than a ministerial task and argues that he could not have been expected to locate Foley's November 14, 2002 letter.[15]

Although the NPS's errors arise out of its disregard of Foley's November 14, 2002 letter and confusion over how Foley's tax returns were to be factored into Foley's claim for EDBGR under the projected income approach, the NPS's failure to further inquire of Foley before applying the projected income approach was careless and unreasonable. Such carelessness cannot be blamed on an employee of the NPS. Had the NPS properly reviewed the file and discovered Foley's November 14, 2002 letter, which explicitly stated that "the Schedule C figures for 'Gross Receipts' and 'Gross Profits' reflected in the tax returns are larger than the 'Gross Profits' figures listed in Mr. Foley's affidavit evidence for the Icy Passage Fish processor claim," the NPS would have clarified with Foley the nature of his returns, as he requested in his November 14, 2002 letter.[16] However, the NPS proceeded without this information and improperly calculated his projected income with incorrect tax figures under the guise of seeking "a more advantageous method of calculating [Foley's] compensation."[17] Although the NPS's decision to conduct this additional analysis may have seemed fair, it was done in an arbitrary manner and treated similarly situated parties differently.[18] Therefore, based on the foregoing, the court concludes that the underlying government conduct and the government's position during this litigation was not substantially justified.

---

[15] Docket 37 at 6.

[16] AR REM 003883.

[17] *Id.* at 004073.

[18] "[A] finding that an agency acted arbitrarily and capriciously by denying equal treatment to similarly situated parties renders it much more likely that the Government's action was not substantially justified." *Wilkett v. ICC*, 844 F.2d 867, 871 (D.C. Cir. 1988).

-5-

Case 1:07-cv-00016-JWS   Document 39   Filed 02/05/09   Page 5 of 8

Having so concluded, the court proceeds to a discussion of the fees requested by Foley. Foley requests attorneys' fees in the amount of $36,344 (or $41,800 including Foley's requested "expertise enhancement") and expenses in the amount of $1,292. The NPS does not oppose the amount of expenses requested. The NPS also does not oppose the hourly attorney rates for 2007 and 2008 as increased by the cost-of-living enhancement, with the exception of Clark's 2008 fees incurred after his suspension from practice on May 15, 2008.[19] The NPS also argues that Foley's request for an enhancement of fees based on expertise should be denied because this matter did not require any special knowledge to litigate.

The EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."[20] When a cost-of-living enhancement is warranted, as here, the EAJA provides for an upward adjustment of the $125 rate contained in the statute by multiplying the $125 statutory rate by the annual average consumer price index figure for all urban consumers ("CPI-U") for the years in which counsel's work was performed, and then dividing by the CPI-U figure for March 1996, the effective date of EAJA's $125 statutory rate.[21] As discussed above, Foley has correctly calculated, and the NPS does not dispute, the cost-of-living enhancement.

The NPS does, however, dispute that Foley should be awarded additional enhanced fees on the basis of the specialized knowledge required to handle this matter. In order to demonstrate that an "expertise enhancement" is warranted, Foley must first show that

> the attorney has developed a practice specialty such as patent law, and that he or she possesses distinctive knowledge and skills developed through that specialty. Second, this distinctive knowledge and skill must be necessary to the litigation for which enhanced fees are sought. Finally, the plaintiff must

---

[19]Docket 31 at 14.

[20]28 U.S.C. § 2412(d)(2(A)(ii).

[21]*Thangaraja v. Gonzales*, 428 F.3d 870, 876-77 (9th Cir. 2005).

-6-

Case 1:07-cv-00016-JWS   Document 39   Filed 02/05/09   Page 6 of 8

demonstrate that similar skills could not have been acquired at the statutory rate.[22]

The inquiry, as the Supreme Court explained, is whether counsel has "some distinctive knowledge or specialized skill needful for the litigation in question-as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation."[23] Although the court believes that counsel for Foley has ably represented him throughout this matter, knowledge of administrative law, even in a particular area of the law such an environmental or fisheries law, is not a specialized skill.[24]

The NPS also contends that attorney Clark's fees should be reduced for the period he was suspended from practice. The court agrees. Given that attorney Clark's duties from May 15, 2008 (the date of his suspension) through the present were limited to the duties of a law clerk or paralegal, it is beyond cavil that Clark is not entitled to the full extent of attorney's fees under the EAJA. The NPS has suggested that Clark's fees be reduced to $129 per hour (from $176 per hour) from May 15, 2008 to the present. Foley has submitted correspondence pursuant to Alaska Bar Rule 15 confirming that he agreed to pay Clark's full hourly rate, but this correspondence - between attorney Baldwin and Foley - occurred after the work in question was performed, and appears to be little more than a *post hoc* justification of Clark's fee prepared specifically for Foley's EAJA application. In any event, the court does not find either Baldwin's Rule 15 notice or Foley's confirmation of Clark's fee conclusive of the worth of Clark's services. Indeed, Clark's work was limited to "legal work of a preparatory nature," "correspondence with [Foley] or third parties," and

---

[22]*Love v. Reilly*, 924 F.2d 1492, 1498 (9th Cir. 1991) (citations omitted).

[23]*Pierce v. Underwood*, 487 U.S. 552, 572 (1988).

[24]*F.J. Vollmer Co., Inc. v. Magaw*, 102 F.3d 591, 595 (D.C. Cir.1996) ("To be sure, lawyers practicing administrative law typically develop expertise in a particular regulated industry, whether energy, communications, railroads, or firearms. But they usually gain this expertise from experience, not from the specialized training justifying fee enhancement. If expertise acquired through practice justified higher reimbursement rates, then all lawyers practicing administrative law in technical fields would be entitled to fee enhancements.").

-7-

"clerical assistance" at deposition or other discovery matters.[25] Therefore, the court agrees that the 28 hours spent by Clark preparing Foley's EAJA application in October 2008 should be paid at the reduced rate of $129 per hour.[26] As a result, Clark's fees for 2008 are reduced from $18,568 to $17,252.[27]

## V. CONCLUSION

For the reasons set out above, the motion at docket 31 is **GRANTED** as follows: Foley is awarded attorneys' fees in the amount of $35,028 and expenses in the amount of $1,292.

DATED at Anchorage, Alaska, this 5th day of February 2009.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[25] Docket 38, Exhibit 1, Attachment 3.

[26] Given the number of hours incurred in preparing Foley's fee application and the fact that the reply brief merely rehashes many of the arguments set forth in the application, the court declines Foley's request in his reply brief that the court also award fees for the 9.5 hours spent by Baldwin and the 22 hours spent by Clark in responding to the NPS's opposition to Foley's fee application. *See In re Sealed Case 00-5116*, 254 F.3d 233, 237 (D.C. Cir. 2001) ("The United States is not required to pay 'for work that could have been avoided.'").

[27] The court arrives at this figure by dividing the 105.5 hours spent by Clark in 2008 into two categories: (1) 28 hours at $129 per hour ($3,612), and (2) 77.5 hours at $176 per hour ($13,640). The court then adds the products of each category to reach Clark's total fees for 2008 - $17,252.